135 So.2d 87 (1961)
George A. HERO, Jr., et al.
v.
CITY OF NEW ORLEANS.
No. 21510.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1961.
Rehearing Denied December 14, 1961.
Certiorari Granted February 19, 1962.
*88 Alvin J. Liska, Charles E. Cabibi, New Orleans, for defendant-appellant.
Sidney W. Provensal, Jr., Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., New Orleans, for plaintiffs-appellees.
Ramsey Clark, Washington, D. C., M. Hepburn Many, Norton L. Wisdom, New Orleans, Roger P. Marquis, Elizabeth Dudley, Washington, D.C., for the United States as amicus curiae.
Before McBRIDE, REGAN and YARRUT, JJ.
YARRUT, Judge.
This matter was submitted on the merits following a joint stipulation of facts, pursuant to our refusal to dismiss defendant-appellant's appeal for failure to file a complete transcript of the record of the default judgment obtained by plaintiffs-appellees in the District Court. Hero v. City of New Orleans, La.App., 129 So.2d 282.
This suit was filed on April 22, 1954, by plaintiffs-appellees, as heirs of the donor (George A. Hero), to enjoin the City from executing a resolution adopted by its Commission Council on April 9, 1954, authorizing the Mayor to donate 110 acres of land in Plaquemines Parish to the United States because such donation would necessarily violate the terms of the original Hero donation; to annul the original donation because of such violation; and to have title returned to them; and for all general and equitable relief. Coupled with a general denial, the City filed pleas of prescription of five and ten years, and a plea of estoppel. In the alternative, the City seeks a judgment in reconvention for $38,500, alleged increase in value of the acreage due to expenditures thereon by it.
In this Court the City filed an exception of no right or cause of action, contending that rescission and revendication can no longer be decreed here, since the land, by virtue of its appropriation, is now owned by the United States. While title cannot be restored to the plaintiffs-appellees, we can give the relief to which they are entitled on the record, to-wit, ownership of the appropriation value, by virtue of LSA-C.C.P. Art. 2164, that "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. * * *"
The facts as stipulated or disclosed by documentary evidence are: In 1925 George A. Hero donated the 110-acre tract (now alleged to be worth more than $80,000) to the New Orleans Airport Commission, subject to the following conditions:
"The said George A. Hero further declares that this donation is made in consideration of his public interest in the development of all manners and modes of transportation through the air and in further consideration of the promise by the donee through its said appearer herein, which said promise shall be binding upon the successors and assigns of the donee, that said property herein donated shall never be used *89 for any purpose other than a terminal for aircraft and that the said property shall forever be made available as such terminal for aircraft for any persons, firms or corporations desiring to use same."
"The said donor hereby stipulates and it is agreed that in the event of the violation by the donee, its successors or assigns, of any of the conditions of this donation, that the said described real estate shall return to the donor, his heirs or assigns, and that appropriate proceedings may be instituted under those circumstances, to reconvey title to the donor herein."
In 1928 the Airport Commission purchased on credit from the donor an additional 50 acres. Unable to pay the mortgage and taxes on these 50 acres, and upon the agreement of the City to assume them, the entire 160-acre tract was conveyed to the City in 1939; the whole thereafter operated by the City as the Alvin Callender Airfield.
In 1941 the Airfield was designated by the U. S. Administrator of Civil Aeronautics as necessary to the national defense. Funds were allocated to clear and improve the land, provided the City bore the cost of purchasing the necessary additional acreage. The City acquired the necessary additional acreage from two Hero family corporations, represented by George A. Hero, Jr., one of the plaintiffs herein.
Later in 1941 the City council adopted a resolution permitting the United States to utilize the Airfield for military purposes exclusively; and, in February, 1945, adopted a resolution authorizing the leasing of the Airfield to the United States for the exclusive use by the armed services, the consideration being the funds spent by the United States in the improvement of the Airfield.
The United States then acquired title to the 110 acres involved here, together with 4,631 other acres in Plaquemines Parish, when it filed, August 27, 1954, condemnation proceedings in the United States District Court for the Eastern District of Louisiana for the establishment of the Joint Air Reserve Training Center, Alvin Callender Airfield, New Orleans, Louisiana. The 110 acres were part of a total of 524.666 acres then owned by the City.
The appropriation by the United States leaves only the question whether plaintiffs-appellees, as heirs of the donor, or the City, is entitled to the condemnation value. The question of quantum is now pending in the United States District Court.
The right of rescission and revendication of the original 110-acre Hero donation in 1925 is governed exclusively by the law of Louisiana; hence, the authorities cited from other jurisdictions are not pertinent here.
The applicable law of Louisiana was recently reviewed in the case of Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885. In brief, LSA-Civil Code, Art. 1559 provides that the revocation of a donation may be demanded for failure of the donee to perform any of the conditions imposed by the donor; and LSA-C.C. Art. 1568 provides that, in case of revocation, the property shall return to the donor or heirs free from all encumbrances created by the donee; and the donor shall have against any person possessing the immovable all rights he would have had against the donee.
The resolution of the City Council on April 9, 1954, authorized the Mayor to donate the property to the United States without any restriction as to use. Hence, the original donor's condition that the property "shall never be used for any purpose other than a terminal for aircraft, and forever made available as such for any persons, firms or corporations desiring to use same" could not and would not be enforced. The United States is not amenable to suit without its consent, and could not be compelled to comply with the donor's conditions. To the contrary, it expressly acquired the property for the exclusive use as a military air reserve training center.
*90 The contention that the land was taken involuntarily from the City is not entirely correct. The City, on April 9, 1954, voluntarily adopted the ordinance to donate the land to the United States without cost or restriction; so there can be no pretense that any appropriation funds were to be, or could be, used to acquire other acreage to comply with the donor's conditions or that the new owner would be obligated to perform the conditions of the donation, as was present in the case of Orleans Parish School Board v. City of New Orleans, La.App., 90 So.2d 683.
Art. 4, § 12, State Constitution of 1921 (as amended by Act 555 of 1958) authorizing the state or any agency, subdivision, or political corporation, to donate to the United States any lands owned by it, whether acquired by donation, purchase or otherwise, to be used for airports, flying fields, landing fields, etc., cannot be construed as allowing a donation or transfer to the United States in violation of the valid conditions of the original donor. Therefore, the heirs are entitled to a revocation, unless defendant-appellant's plea of prescription or estoppel is maintained.
On the question of prescription, it is admitted that the United States has been in possession of the acreage since 1945 under a lease from the City, and permitted the private use required by the original donor to the time of this suit in 1954. Hence, there was no breach until acquisition by the United States on August 27, 1954, when it filed suit for condemnation for exclusive military use. This suit was filed on April 22, 1954, before the acquisition by the United States, so neither the five nor the ten-year plea of prescription is good under LSA-C.C. Art. 1567, which provides that prescription against revocation for non-performance of conditions imposed on donee runs only from the date the donee ceases to fulfill his obligations.
On the question of estoppel, this plea is predicated upon the acquiescence of plaintiffs-appellees in conveyances by the Hero corporations to the City in 1941 of other acreage, wherein they, for the nominal consideration of $5 to each major heir, and $50 to the minor heir, joined "in order to assist, benefit, and cooperate in the national defense program of the United States, in the fulfillment of which the land so transferred will be converted into landing and flying fields for airplanes of a public nature, and for the enlargement of the Alvin Callender Airfield."
This quit-claim recital could only bind the heirs with respect to those properties, not the property involved here. Title to an immovable cannot be acquired by estoppel. Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392. LSA-C.C. Arts. 2272 and 2274, provide that confirmation, ratification or voluntary execution of a donation by the heirs or assigns of the donor, after his decease, involves their renunciation to oppose either defects of form or any other exception. Any ratification or confirmation must relate to the property involved in the donation, and cannot be imported by implication from a quitclaim or waiver with respect to other property, even though adjacent to the donated property. Waiver or divestiture of interest in an immovable must be clear and unequivocal. The quitclaiming of an interest in other lands to "assist the United States in the national defense program" is not the transfer or waiver of title to the acreage involved here. There is no showing or pretense that the quitclaiming by plaintiffs-appellees of any interest they may have had in adjoining land, for a nominal consideration, to assist the United States in its national defense program, caused defendant to act to its detriment or prejudice with respect to plaintiffs or the United States quoad the 110 acres involved here. The donor or his heirs are estopped only where the donee disposes of the donated property with either's full acquiescence. Embry v. Embry, 170 La. 363, 127 So. 869. The plea of estoppel is not well taken.
*91 The City's reconventional demand for $38,500, increased value of the acreage since the donation, by reason of expenditures made by it or in cooperation with the United States, must also be dismissed for want of any evidence in support of such demand; and by virtue of LSA-C.C. Art. 1568, referred to supra.
The judgment of the District Court in favor of the plaintiffs-appellees and against the City of New Orleans, defendant-appellant, rescinding and annulling the donation made by George A. Hero to the New Orleans Airport Commission, and rescinding and annulling the conveyance by the New Orleans Airport Commission to the City of New Orleans, and recognizing plaintiffs-appellees as sole owners of the property at the time of its appropriation, and that plaintiffs-appellees are entitled to the proceeds of the appropriated land as fixed by the Federal Courts, is affirmed.
Judgment affirmed.